```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


ARLEN B. BROWN,                   )
                                  )
          Petitioner,             )
                                  )
     v.                           )    No. 4:07 CV 184 DDN
                                  )
TROY STEELE,                      )
                                  )
          Respondent.             )
```

### MEMORANDUM

This action is before the court upon the petition of Missouri state prisoner Arlen B. Brown for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

### I.  BACKGROUND

On June 11, 2003, a jury in the Circuit Court of Ste. Genevieve County, Missouri, found petitioner Arlen Brown guilty of possessing methamphetamine. (Doc. 9, Ex. A at 5.) On August 12, 2003, he was sentenced as a prior and persistent offender to fifteen years imprisonment, to be served consecutively to a sentence he was already serving. (Id. at 6.)

On direct appeal, the Missouri Court of Appeals affirmed his conviction. (Doc. 9, Ex. G)(unpublished opinion); Missouri v. Brown, 148 S.W.3d 848 (Mo. Ct. App. 2004)(per curiam without published opinion). Petitioner then moved for post-conviction relief under Missouri Supreme Court Rule 29.15. The circuit court denied the motion after conducting an evidentiary hearing. (Doc. 9, Ex. H at 63-68.) The Missouri Court of Appeals affirmed the circuit court's decision. (Id., Ex. M)(unpublished opinion); Brown v. Missouri, 203 S.W.3d 240 (Mo. Ct. App. 2006)(per curiam without published opinion).

On appeal from the denial of post-conviction relief, the Missouri Court of Appeals stated the facts that the trial evidence indicated:

> The record reveals that during [petitioner's] trial, Missouri State Highway Patrol Trooper Douglas McDaniel

(Trooper) testified on behalf of the State. Trooper testified that on July 13, 2002, he observed an older-model gray van pulling a flat-bed trailer. The trailer had no license plate or tail lights. Trooper activated his lights to conduct a traffic stop, but the van did not stop. Trooper then activated his siren. The van slowed, but still did not stop.

As Trooper continued to follow the van at a slow speed, he observed the van's passenger throw an object from the front passenger window. The van then stopped.

Trooper approached the van and ordered its occupants to exit the van. Paul Hitt (Hitt) exited from the driver's side of the van and [petitioner] exited from the passenger side.

After Trooper handcuffed both individuals, he walked over to retrieve the object tossed from the van. As Trooper approached the object, he noticed the odor of anhydrous ammonia and ether. The object appeared to be a large black trash bag containing something square. When Trooper opened the bag, he saw a box, partially closed with tape, which emanated a very strong odor of ether and anhydrous ammonia.

Trooper obtained a gas mask from his patrol car and opened the box. The box contained glass jars filled with liquid, which Trooper believed to be chemicals for manufacturing methamphetamine. One jar, containing ether, was broken, but the other jars remained intact.

Trooper returned to the van and placed [petitioner] and Hitt under arrest. When Trooper told the men that they were under arrest for attempting to manufacture methamphetamine, [petitioner] told Trooper that the bag was not theirs and that it was already on the side of the road.

Trooper called for assistance and searched the van. Trooper found a motorcycle battery, a hand-held spotlight, and an interior light with a lot of wires. Both lights had cords with alligator clips that enabled them to be connected to batteries and used as a portable lighting system.

Corporal Brenda Cone (Cone) of the Missouri State Highway Patrol's Southeast Missouri Drug Task Force also testified for the State. Cone reported that an analysis of the substances found in the box revealed that two of the jars contained pseudoephedrine tables soaking in acetone and two other jars contained methamphetamine.

Cone testified that she has observed lights such as those Trooper retrieved from the van being used as light sources for methamphetamine labs in rural secluded settings with no access to electricity. Methamphetamine labs are set

up in such secluded areas because of the chemicals' obvious odors.

Hitt was called as a witness on behalf of [petitioner]. Hitt testified that while [petitioner] was helping Hitt collect some gravel from a creek, Hitt found a trashbag containing some mason jars and rags. Hitt decided to keep the bag and placed it in the van. When [petitioner] saw the bag, he asked Hitt what the bag contained. Hitt told [petitioner] that the bag contained jars, but that he did not know what they were.

[Petitioner] testified on his own behalf. [Petitioner] stated that the first time he saw the trashbag was when he got into the truck after loading gravel with Hitt. When [petitioner] asked Hitt about the bag, Hitt told him the bag was his. [Petitioner] said that he threw the box out of the van's window after Trooper began following them because Hitt told him to throw the box out because "it might be something illegal."[1]

(Doc. 9, Ex. M at 2-4.)

## II. FEDERAL ALLEGATIONS

In his petition for a writ of habeas corpus with this court, petitioner Brown alleges two grounds for relief:

(1) The trial court erred when it refused to declare a mistrial after witnesses testified about petitioner's post-arrest silence.

(2) Petitioner received constitutionally ineffective assistance of appellate counsel due to counsel's failure to challenge the sufficiency of the evidence supporting the conviction.

Respondent argues that both claims are without merit, and that, even if the claims are meritorious, the state appeals court reasonably applied Supreme Court precedent in rejecting the claims. Respondent further argues that any error by the trial court, as alleged in Ground 1, had no substantial or injurious effect on the trial's verdict; so, any alleged error was harmless.

---

[1]On direct examination, petitioner testified that he had previously been convicted of driving while intoxicated in 1979 and 1980, two counts of fraudulently attempting to obtain a controlled substance in 1990, and possessing morphine illegally in 2001. (Doc. 9, Ex. C at 214.)

# III. DISCUSSION

## Standard of Review

Relief from a state court conviction may not be granted on federal habeas corpus grounds unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court decision is "contrary to" established federal law if it contradicts the governing Supreme Court cases on a question of law or if, when confronting facts "materially indistinguishable" from the facts addressed in a Supreme Court decision, it reaches a different result. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision unreasonably applies clearly established federal law, if, in the federal court's independent judgment, "the relevant state court decision [not only] applied clearly established federal law erroneously or incorrectly [, but also did so] . . . unreasonabl[y]." Nicklasson v. Roper, 491 F.3d 830, 834 (8th Cir. 2007)(quoting Williams, 529 U.S. at 410-411).

Section 2254 also requires federal courts to presume that state court factual findings are correct, and it places the burden of rebutting that presumption on the petitioner, who may prove so only with clear and convincing evidence. Nicklasson, 491 F.3d at 834.

## Ground 1: Trial Court Error

Petitioner contends that the trial court erred when it did not grant his motions for a mistrial after witnesses violated his Fifth Amendment right by testifying about his post-arrest silence. Generally, once a person in custody is advised of his right to silence pursuant to a Miranda warning, that person's silence cannot be offered to impeach an explanation he later offers at trial. Doyle v. Ohio, 426 U.S. 610, 618-19 (1976).

While a Miranda warning may not explicitly assure an arrested person that silence contains no penalty, the Supreme Court has held that such an assurance is implicit to anyone who receives the warnings. Id. However, the Fifth Amendment privilege against compulsory self-incrimination is irrelevant to a citizen's decision to remain silent when he is under no official compulsion to speak. United States v. Frazier, 408 F.3d 1102, 1110 (8th Cir. 2005) (quoting Jenkins v. Anderson, 447 U.S. 231, 241 (1980) (Stevens, J., concurring)). Therefore, the receipt or lack of a Miranda warning may be determinative of the constitutional issue. Vick v. Lockhart, 952 F.2d 999, 1003 (8th Cir. 1991); see also Frazier, 408 F.3d at 1111. The use of post-arrest, pre-Miranda silence can be used to impeach the defendant when he chooses to testify in his own defense. Fletcher v. Weir, 455 U.S. 603, 607 (1982).

A violation of the ruling in Doyle is shown when the state uses for impeachment purposes a defendant's silence after he was advised of his Miranda rights. Brecht v. Abramson, 507 U.S. 619, 628 (1999).

If a Doyle violation is shown, the habeas petitioner bears the burden of showing that the trial court's refusal to remedy the violation was not constitutionally harmless because the violation "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. at 637 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

In determining whether an alleged violation of Doyle was harmless, the court must consider relevant factors which include whether the state's references to the post-Miranda rights silence were infrequent; whether the record included the constitutionally permissible use of pre-Miranda silence, thus making the post-Miranda silence merely cumulative; and whether or not the evidence of the habeas petitioner's guilt was weighty if not overwhelming. Brecht v. Abramson, 507 U.S. at 638-39. Petitioner asserts Doyle violations in three specific incidences during trial.

Petitioner first asserts a violation of Doyle when state's witness Cpl. Brenda Cone testified in response to defense counsel's cross-examination about why the police did not conduct chemical tests of

petitioner's person and his clothing:

> Q. [By defense counsel Montgomery]: Is there any of you that believe that that same testing procedure could not be conducted on items of clothing or the person of an individual to confirm the presence of methamphetamine or do you know?
>
> A. [By witness Cone]: I am sure that I could send clothes in to see if there were any chemicals on them, but they would not be able to say for sure that there was methamphetamine on them. They may be able to say there was ether on them, anhydrous ammonia would probably dissipate. But I thought we had our suspects and I didn't see any point in doing it and it was also my understanding that neither one of the suspects was willing to speak with anyone and wanted to talk to their attorneys.

(Doc. 9, Ex. C at 156.) Defense counsel immediately objected to the testimony and moved for a mistrial. The trial court denied the motion, instead offering defense counsel a curative jury instruction and to strike the comment, which counsel rejected. (Id. at 158.)

On direct appeal, the Missouri Court of Appeals ruled that the witness's statement, in the last sentence quoted above, was improper. It then treated the statement as not invited by the defense counsel's question. The court determined from the record that the statement, although not specifically responsive to a direct question by defense counsel, was generally responsive to his question. The court concluded there was no bad faith shown on the part of the witness or the prosecutor, the statement was an isolated occurrence, the prosecutor did not try to take advantage of the statement, and the testimony was somewhat vague. The court then acknowledged that the conviction was based on "overwhelming circumstantial evidence" and concluded that "the evidence of guilt [was] so overwhelming as to eliminate any reasonable doubt that [petitioner] would have been found guilty even without the erroneously admitted evidence." (Doc. 9, Ex. G at 3-5.)

The Missouri courts' rulings on petitioner's claim of error were reasonable applications of federal law. There is no allegation by petitioner or evidentiary showing that the silence Cpl. Cone referred to came after he had been advised of his Miranda rights. Further, the state did not introduce the subject evidence; it was brought out as a response to a question by defense counsel about why certain items of

-6-

evidence were not forensically tested. See Brecht v. Abramson, 507 U.S. at 628. For these reasons, there was no Doyle violation.

Petitioner's other two Doyle complaints concern two questions posed to him by the prosecutor during cross-examination. On direct examination by defense counsel, petitioner had testified that earlier in the day of the arrest he and Hitt were working on Hitt's house. They drove four or five miles to a creek to collect gravel. Brown testified he never saw the black trash bag until he got back into the vehicle to return to the residence. When Brown asked Hitt what the black bag was, Hitt only said that it belonged to him and that he was taking it home.

Petitioner testified that on the drive back to the residence the officer pulled them over, and Hitt, perhaps saying that the bag might contain something illegal, told petitioner to throw the bag out of the window, which he did. Petitioner testified he had nothing to do with any of the seized items. Petitioner denied making any statement at all regarding the trashbag to Trooper McDaniel when outside the vehicle.[2] Petitioner also testified that he never smelled anything emanating from the bag. The direct-examination concluded when, in answer to the question "As you sit here today Mr. Brown, are you telling this jury that you had no knowledge of what the contents of that bag was when you threw it out?", petitioner stated, "May God strike me dead right now if I knew anything was in that box when I threw it out. May God strike me dead right now."

On cross-examination, after reviewing petitioner's criminal history, the prosecutor asked him whether, with petitioner's experience in the criminal justice system, the officer had to have smelled something suspicious emanating from the bag before he could legally look inside it. Petitioner affirmed that he knew nothing about what was in the bag he threw out the window of the vehicle and denied he smelled a

---

[2]At trial Trooper McDaniel testified for the state that after he examined the material that he saw petitioner throw out of the vehicle, he walked back to Hitt and the petitioner, who were then in handcuffs, and told them they were under arrest "for possession to attempt to manufacture methamphetamine." When asked what happened next, McDaniel testified, "I am . . . 99% sure Arlen Brown stated it wasn't theirs that it was already there." (Doc. 9, Ex. C at 101-02, 120.)

strong odor coming from the bag.  At about this time in the cross-examination, the prosecutor stated, "You didn't make any statements until after Mr. Hitt was convicted that is when you come up with this--."  At that point, defense counsel objected to questioning about petitioner's not making any statement to the police, which he characterized as the exercise of a constitutional right.  Defense counsel again moved for a mistrial, which was denied, although the court directed the prosecutor "to stay away from any right for him to remain silent" while telling the prosecutor "[t]he Court feels that you do have the right to cross examine him [about the fact that] this is the first time [petitioner] ever told this story.  That is proper impeachment." Thereafter, the prosecutor asked:

> Q. [By the prosecutor] Mr. Brown, the first time you told this story I believe was on February 10, 2003 at your probation revocation violation hearing; is that correct?
>
> A. I believe so.
>
> Q. That is the first time you come up with this story, right?
>
> A. It is not a story, it is the truth.

(Doc. 9, Ex. C at 216-28.)

Petitioner's argument is again burdened with the fact that no allegation or evidence of record indicates that the silence referred to by the prosecutor came after he received a Miranda warning.  Furthermore, the prosecutor's questioning was not intended to show guilt by proving petitioner was silent in the face of questioning; instead it was meant to impeach his credibility by pointing out that he first came forward with his story a substantial time after the initial arrest.  For these reasons, the state court properly found no violation of Doyle.

Furthermore, assuming that these three statements violated the Supreme Court's holding in Doyle, which this court does not find or conclude, the trial court's refusal to grant a mistrial is harmless error under the standard stated in Brecht, and does not require habeas relief.  The trial testimony did not have a substantial or injurious effect on the jury's verdict.  The jury was presented with strong evidence that petitioner threw a box out of the passenger window of a

vehicle, driven by petitioner's co-defendant, which petitioner knew contained a portable methamphetamine lab. The state trooper testified he saw petitioner throw the box from the vehicle. (<u>Id.</u> at 96.) He and Cpl. Cone testified about the strong odor of the methamphetamine precursor chemicals they smelled coming from the seized materials. (<u>Id.</u> at 99, 137.)

The jury also heard testimony and was shown evidence indicating that other items seized during a search of the van proved that the vehicle's occupants were involved in methamphetamine production. Cpl. Cone testified, based on her extensive experience, that batteries and lights known to be used in the covert production of methamphetamine were found in the vehicle. (<u>Id.</u>) Additionally, she testified that the setup of the methamphetamine lab indicated that two "cooks" were manufacturing the methamphetamine, and that one individual may have been teaching another how to produce methamphetamine. (<u>Id.</u> at 132, 142-43.) This is particularly incriminating given that only petitioner and Hitt were in the vehicle at the time of the arrest.

Furthermore, the allegedly improper statements by the prosecutor were brief and few in number and they never impermissibly implied guilt from the fact that petitioner refused to answer the prosecutor's questions. In sum, strong evidence supported the jury's determination that, when petitioner threw the box from the vehicle he was aware of its contents, that he threw it out to avoid being caught with the methamphetamine lab, and that he therefore possessed the methamphetamine. Given the overall weight of the record evidence and the nature of the allegedly improper testimony, it is clear that any error that may have been committed by the trial court did not prejudice petitioner and was harmless because it did not have a substantial or injurious effect on the jury's verdict.

Ground 1 is without merit.

### Ground 2: Ineffective Assistance of Appellate Counsel

Petitioner next alleges that his appellate counsel rendered ineffective assistance by failing to challenge, on direct appeal, the sufficiency of the evidence supporting his conviction. Petitioner

raised this ground before the circuit court in his motion for post-conviction relief under Missouri Supreme Court Rule 29.15. In denying this ground for relief, the court properly applied the standard in Strickland v. Washington, 466 U.S. 668 (1984), and concluded that petitioner's experienced appellate counsel had reasonable grounds for not raising the issue on appeal, especially since the Missouri Court of Appeals on direct appeal from the conviction had described the evidence as overwhelming. At the post-conviction relief evidentiary hearing even petitioner testified that he felt that the jury simply did not believe his testimony. Therefore, the circuit court denied post-conviction relief. (Doc. 9, Ex. H at 66-67.)

On direct appeal from the denial of post-conviction relief, the Missouri Court of Appeals ruled that the trial evidence was legally sufficient to support petitioner's conviction and ruled that appellate counsel did not render constitutionally ineffective assistance by not raising the sufficiency of evidence ground on direct appeal from the conviction. (Id. Ex. M at 4-6.)

The Missouri courts correctly applied relevant federal law in denying petitioner's insufficiency of evidence ground. The right to effective assistance of counsel is rooted in the Sixth and Fourteenth Amendments. Strickland v. Washington, 466 U.S. 668. For petitioner to successfully raise a claim of ineffective assistance of counsel, he must show that counsel's representation fell below an objective standard of reasonableness. Id. at 688. The Court in Strickland enunciated a two-part test to guide courts in determining whether counsel's performance fell below the standard of reasonableness. First, petitioner must show that counsel's performance was deficient. Id. If that can be shown, petitioner must next demonstrate that counsel's errors resulted in prejudice and rendered the result unreliable. Id. It is recognized that the strategic and tactical decisions made by counsel, though they may appear unwise in hindsight, cannot serve as the basis for an ineffective assistance claim under Strickland. Evans v Luebbers, 371 F.3d 438, 445 (8th Cir. 2004). Petitioner must overcome a strong presumption that counsel rendered appropriate assistance, and it is not within the federal habeas court's province to accept any strategy that

-10-

counsel could have followed. Marcrum v. Luebbers, 509 F.3d 489, 502 (8th Cir. 2007).

To rebut the presumption of constitutionally effective assistance, petitioner must show that counsel's actions were the product of inattention or neglect, and not reasoned judgment. Id. Because of this presumption and the reality that effective appellate advocacy often entails screening out weaker issues, the Sixth Amendment does not require that appellate counsel raise every colorable or non-frivolous issue on appeal. Roe v. Delo, 150 F.3d 416, 418 (8th Cir. 1998). Therefore, the inquiry is dependent on the reasoning behind counsel's decision to not pursue the insufficiency of evidence issue on direct appeal.

Petitioner's counsel on direct appeal submitted an affidavit to the appeals court explaining the decision not to raise the insufficiency issue on direct appeal. Counsel outlined several factors which guided her decision to not argue that ground on appeal. First, counsel stated that the evidence against petitioner was significantly inculpatory. (Doc. 9, Ex. I at 3-4.) Next, counsel noted that the jury's knowledge of petitioner's prior record severely impeached his credibility regarding his explanation of events. (Id. at 4.) Finally, counsel stated that the sufficiency of evidence issue was not properly preserved in the motion for a new trial. (Id.) From appellate counsel's affidavit it is clear that counsel was aware of the insufficiency of evidence issue when bringing the appeal, but after careful thought and deliberation chose not to pursue that argument. Counsel's decision to not raise the issue on appeal was the product of reasoned deliberation, and was not due to inattention or lack of diligence. As such, counsel's performance was not deficient as required by Strickland.

Even assuming petitioner proved the first prong of Strickland, he still fails the second prong. The record shows that petitioner was not prejudiced in any way from counsel's failure to assert an insufficiency-of-evidence claim on direct appeal. On direct appeal from the denial of post-conviction relief, the same appeals court reasonably concluded that the evidence presented to the jury was a sufficient basis for the verdict. Since the result would have been no different had the

insufficiency argument been presented to the state court of appeals, petitioner's claim also fails the second <u>Strickland</u> requirement. Appellate counsel's performance never fell below the requisite standard of objective reasonableness.

Ground 2 is without merit.

### IV. CONCLUSION

For the reasons stated above, the state adjudication of petitioner's claims did not result in a decision contrary to, or an unreasonable application of, federal law as determined by Supreme Court precedent nor was the state court decision based upon an unreasonable determination of the facts as required by the statute. <u>See</u> 28 U.S.C. § 2254(d)(1)-(2). Arlen Brown's petition for a writ of habeas corpus is denied. Because petitioner never showed a deprivation of any of his constitutional rights, a certificate of appealability is also denied. <u>See</u> 28 U.S.C. § 2253(c)(2).

       **/S/   David D. Noce**
       **UNITED STATES MAGISTRATE JUDGE**

Signed on December 29, 2008.